UNITED STATES of America, Appellee,

v.

Samuel ADELMAN, Defendant–Appellant.

Docket No. 98–1228.

United States Court of Appeals,
Second Circuit.

Argued Dec. 10, 1998.

Decided Feb. 19, 1999.

Cathy Seibel, Assistant United States Attorney for the Southern District of New York (Mary Jo White, United States Attorney, Craig A. Stewart, Assistant United States Attorney, New York, New York, of counsel), for Appellee.

Richard D. Willstatter, White Plains, New York (Green & Willstatter, White Plains, New York), for Defendant–Appellant.

Before: KEARSE and STRAUB, Circuit Judges, and MURTHA, District Judge.[*]

MURTHA, District Judge:

Samuel Adelman appeals from a sentence imposed by the United States District Court for the Southern District of New York, which Judge Stanley S. Harris[1] imposed on April 15, 1998 after Adelman pleaded guilty to making false statements within the jurisdiction of the federal government. Judge Harris calculated Adelman's Sentencing Guidelines offense level based in part on his determination that: (1) a three-level official victim enhancement applied because a threat was made to a federal judge; and (2) a four-level upward departure was warranted because there were multiple victims to the threat. He then sentenced Adelman to a thirty-month term of imprisonment. Adelman contends on appeal that the district court erred in applying the official victim enhancement and abused its discretion in upwardly departing.

We affirm.

## BACKGROUND

In 1995, Adelman was convicted of conspiracy to commit mail and wire fraud. The prosecution took place in the Southern District of New York before Judge Barrington D. Parker, Jr., who subsequently sentenced Adelman. The sentence included a term of supervised release, which Adelman later violated. Upon his admission of violating the terms of his supervised release, Judge Parker again sentenced Adelman.

In May of 1997, a very intoxicated Adelman twice called the U.S. Marshals Service in White Plains. In both calls he asked for Judge Parker. In the first call, Adelman stated: "I have that nigger Parker's daughter and he's not getting her back." In the second phone call, he said: "I'm gonna get him. I want Parker," and ". . . I got his kid. I want Parker."

On September 1, 1997, Adelman—again extremely intoxicated—left a recorded message at the Marshals Service office. He claimed to know about a plot to kill Judge Parker. Adelman further stated he wanted money in return for providing more information about the alleged plot.

Through the phone number left with his message, Adelman was located and arrested on September 4, 1997. He admitted to the arresting agent that he had made one call in May, as well as the September call. Thereafter, Adelman waived indictment and pleaded guilty to a one-count felony information, charging him with violating 18 U.S.C. § 1001. Section 1001 covers the making of a false statement "in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States . . . ." 18 U.S.C. § 1001(a).

Pursuant to a stipulation in the plea agreement partially addressing the application of the Sentencing Guidelines,[2] the government and Adelman agreed § 2A6.1, entitled "Threatening or Harassing Communications," was the applicable guideline for Adelman's offense. Under § 2A6.1, the base offense level is twelve. The parties further agreed a satisfactory guilty plea would entitle Adelman to a two-level reduction for acceptance of responsibility, see U.S.S.G. § 3E1.1, and that Adelman's criminal history category was III.

The government, however, sought a three-level official victim enhancement pursuant to § 3A1.2. Adelman reserved the right to appeal this increase if it were imposed by the court. In its Presentence Report, the Probation Office agreed with the appropriateness of the official victim enhancement. In addition, because the base offense level did not consider a multiple victim scenario, it sug-

[*] The Honorable J. Garvan Murtha, Chief Judge of the United States District Court for the District of Vermont, sitting by designation.

[1]. United States District Judge for the District of Columbia, sitting by designation pursuant to 28 U.S.C. § 294(d).

[2]. The 1997 edition of the United States Sentencing Commission's GUIDELINES MANUAL was used in this case.

gested a four-level upward departure to account for the fact that the threat in this case also victimized Judge Parker's wife and their three children. In arriving at its four-level departure recommendation, the Probation Office used the methodology of § 3D1.4, "Determining the Combined Offense Level."

In sentencing Adelman, Judge Harris adopted the findings and conclusions of the Probation Office as found in its revised April 8, 1998 Presentence Report. He granted the government's motions for official victim enhancement and for upward departure due to the involvement of multiple victims. Therefore, Adelman's ultimate offense level was sixteen.[3] Given Adelman's criminal history category of III, the corresponding range of imprisonment was from 27 to 33 months. Judge Harris sentenced Adelman to 30 months of imprisonment.

## DISCUSSION

### A. Official Victim Enhancement

■ In reviewing a Guidelines sentence, we are required to "accept the findings of fact of the district court unless they are clearly erroneous," and to "give due deference to the district court's application of the guidelines to the facts." 18 U.S.C. § 3742(e) (1994); *see, e.g., United States v. Fernandez*, 127 F.3d 277, 283 (2d Cir.1997). An appellate court will not "overturn the court's application of the Guidelines to the facts before it unless [it] conclude[s] that there has been an abuse of discretion." *Fernandez*, 127 F.3d at 283 (citing *United States v. Santiago*, 906 F.2d 867, 871 (2d Cir.1990)).

■ Here, the record established that Adelman's phone calls to the Marshals Service all specifically identified Judge Parker, a government official. In fact, Adelman asked for Parker in the two May phone calls. The record also supports the court's finding that Adelman's threatening conduct was motivated by Parker's position. Therefore, there is

no basis to disturb the court's factual findings.

Further, since guideline § 2A6.1 did not contemplate a government official receiving such threats as Adelman made, the sentencing court was correct to consider this factor. It did not err in enhancing Adelman's offense level pursuant to § 3A1.2, which instructs the court to increase the offense level by three "If—(a) the victim was a government officer or employee; ... or a member of the immediate family of any of the above, *and* the offense of conviction was motivated by such status...." U.S.S.G. § 3A1.2 (emphasis added). Inasmuch as the requirements for the official victim enhancement were met, the district court's application of the enhancement was proper.

### B. Multiple Victim Upward Departure

■ Although the Sentencing Guidelines were intended to create consistency in sentencing for "offenders with similar histories, convicted of similar crimes, committed under similar circumstances," they were not meant to eliminate all of the district court's discretion. *See Koon v. United States*, 518 U.S. 81, 92, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996) (citations and internal quotation marks omitted). Therefore, when a district court is faced with an atypical case—one not contemplated to be included in a guideline heartland—it may consider whether a departure is warranted. *See* 18 U.S.C. § 3553(b); *see also* U.S.S.G. Ch.1, Pt.A, intro. comment. 4(b). "To determine whether a circumstance was adequately taken into consideration by the [Sentencing] Commission, Congress instructed courts to 'consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission.'" *Koon*, 518 U.S. at 92–93, 116 S.Ct. 2035 (quoting 18 U.S.C. § 3553(b)). After such consideration, if a district court decides to depart from the Guidelines, in most cases its decision will "be due substantial deference, for it embodies the traditional exercise

---

3. Pursuant to U.S.S.G. § 2A6.1, defendant's base offense level was twelve. The district court enhanced the base level by three levels, pursuant to U.S.S.G. § 3A1.2, the official victim subsection of the Sentencing Guidelines. It then upwardly departed four levels, pursuant to U.S.S.G.

§ 5K2.0, to reflect the multiple victims involved in the offense. This was then reduced by three levels, pursuant to U.S.S.G. § 3E1.1(b), because of defendant's acceptance of responsibility. Thus, defendant's ultimate offense level became sixteen.

of discretion by a sentencing court." *Id.* at 98, 116 S.Ct. 2035 (citing *Mistretta v. United States,* 488 U.S. 361, 367, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989)).

■ When an appellate court reviews a sentence that departs from the Guidelines due to the existence of aggravating or mitigating circumstances warranting a sentence different from that described by the Guidelines, the standard of review used is abuse of discretion. *See Koon,* 518 U.S. at 91, 116 S.Ct. 2035. In so doing, the Second Circuit determines whether: (1) upon *de novo* review, the factor justifying the departure is related to the offense and not adequately considered by the Sentencing Commission; (2) the departure is supported by findings of fact; and (3) the district court has explained adequately how it determined the extent of the departure. *See United States v. Malpeso,* 115 F.3d 155, 169 (2d Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 2366, 141 L.Ed.2d 735 (1998).

■ In this case, the sentencing court found Adelman's threats affected people other than Judge Parker. The Guidelines do not provide for the consideration of harm to multiple victims of threatening communications. The Specific Offense Characteristics of § 2A6.1 are meant to cover more serious threats and do not encompass the multiple victim situation presented by this case. Since the multiple victim factor of this case is sufficiently atypical, causing it to fall outside the heartland of guideline § 2A6.1, the district court was well within its discretion to upwardly depart. *See* U.S.S.G. § 5K2.0, p.s. ("The controlling decision as to whether and to what extent departure is warranted can only be made by the courts."); *see also Malpeso,* 115 F.3d at 169–70 (approving an upward departure for multiple victims where the applicable guideline only contemplated a single victim).

Here, one of Adelman's calls indicated he had Judge Parker's "kid." Since Adelman did not specify which child he was referring

to and since Judge Parker has three children, the court found all three children were victims of the threatening behavior. This is clearly a reasonable finding. Any of the three children could have reasonably felt threatened by such a generically-phrased threat. *See generally* Presentence Report ¶¶ 4–5, 16–17.

In determining the extent of its upward departure, the district court analogized the situation to the grouping principles of § 3D1.4, "Determining the Combined Offense Level." *See, e.g., United States v. Johnson,* 931 F.2d 238, 241–42 (3rd Cir.) (approving the use of analogy for determining the reasonableness of departures from the Guidelines), *cert. denied,* 502 U.S. 886, 112 S.Ct. 242, 116 L.Ed.2d 197 (1991); *United States v. Pittman,* 55 F.3d 1136, 1140 (6th Cir.1995) (approving the use of hypothetical counts as "merely a methodology on which the district court relied to calculate the degree of departure" and finding the resulting departure reasonable). In effect, the § 3D1.4 methodology creates a hypothetical count for each of the victims of Adelman's threat. In view of the instructions of Application Note (2) of § 2A6.1 that, "[m]ultiple counts involving different victims are not to be grouped under § 3D1.2[,]" the district court calculated a four-level increase in Adelman's offense level.[4] We hold the district court did not abuse its discretion in using this grouping method. The facts established multiple victims to Adelman's threats, thereby providing an appropriate basis for upward departure.

We have carefully considered the defendant's remaining contentions and find them to be without merit.

### CONCLUSION

We hold the district court did not err in applying the official victim enhancement, nor did it abuse its discretion in upwardly departing because of the involvement of multiple victims to defendant's threat. Therefore,

---

4. We decline to address whether Mrs. Parker was a victim. Under § 3D1.4's grouping analysis, the same four-level increase in offense level applies whether there are four or five units (*i.e.,* whether Mrs. Parker was included or not).

Thus, under the analogy Judge Harris used for his calculation, he would have departed upwardly by the same amount regardless of whether he considered Mrs. Parker to have been a victim.

the district court's sentence of thirty months' imprisonment is affirmed.