**UNITED STATES of America,**
**Appellee,**

v.

**Elizabeth CASTAÑO, Defendant–**
**Appellant.**

**Docket No. 00–1246.**

United States Court of Appeals,
Second Circuit.

Argued Oct. 26, 2000.

Decided Dec. 8, 2000.

Cecil C. Scott, Assistant United States Attorney for the Eastern District of New York (Loretta E. Lynch, United States Attorney, and Peter A. Norling, Assistant United States Attorney, of counsel), Brooklyn, NY, for Appellee.

David A. Lewis, The Legal Aid Society, Federal Defender Division Appeals Bureau, New York, NY, for Appellant.

Before OAKES, WINTER, and SACK, Circuit Judges.

SACK, Circuit Judge:

Elizabeth Castaño appeals from a judgment of conviction following resentencing entered on March 29, 2000 in the United States District Court for the Eastern District of New York (Edward R. Korman, *Judge*). She argues on appeal that the district court erred by not granting her a two-level reduction in her offense level under the Sentencing Guidelines because she played a minor role in the offense. Because the district court's decision was not clearly erroneous, we affirm the judgment.

## BACKGROUND

The facts are not in dispute. On October 21, 1992, Elizabeth Castaño pleaded guilty to using a telephone to facilitate a murder-for-hire. The murder plot was initiated when high-ranking members of a Colombian drug cartel hired John Mena to kill newspaper reporter and publisher Manuel de Dios Unanue. Mena then hired Juan Carlos Velasco, the defendant's husband, to carry out the murder for $20,000. Velasco located Unanue and discovered that he frequented a restaurant called Meson Asturias. After one aborted attempt to kill Unanue, Velasco decided to subcontract the murder to José James Benitez and Elkin Farley Salazar so that he could complete a drug deal in Miami. Velasco offered Benitez and Salazar $15,000 for the job, telling them that the victim was a drug dealer who owed him money. Velasco also told them that his wife, Elizabeth Castaño, would provide them with information needed to locate and identify the victim. Benitez and Salazar then hired Wilson Alejandro Mejia Velez ("Mejia") to be the triggerman for $7,000.

On March 11, 1992, Benitez, Salazar, Mejia, and Castaño drove together to the Meson Asturias Restaurant. Castaño showed the other three a picture of Unanue so that they could identify him. When they arrived at the restaurant, Castaño peered through the restaurant's window and then signaled to the others that Unanue was inside. Benitez and Mejia entered the restaurant and confirmed that Unanue was there. The four then drove to a pool hall to drop off Castaño. Benitez, Salazar, and Mejia then picked up a gun at Benitez's house and returned to the vicinity of the restaurant. Mejia entered the restaurant, shot Unanue twice in the head killing him, and made a getaway with Benitez and Salazar.

After the murder, Benitez, Salazar, and Mejia called Castaño and demanded payment. Castaño then called Mena, who told her that he would need authorization from the cartel before providing the full amount. He advanced Castaño $2,500 of his own money, which she paid to the three men. On March 12, 1992, Mena received $20,000 from the cartel for the murder. He gave Castaño $16,500, after subtracting the $2,500 he had already given her and an additional $1,000 that Velasco owed him. Castaño then paid Benitez and Salazar $12,500 and kept the remaining money for herself and Velasco.

On October 21, 1992, Castaño pleaded guilty to an information charging her with using a telephone to facilitate the murder-for-hire of Unanue in violation of 18 U.S.C. § 1958. Her cooperation with the government led to the indictments of Benitez and Mena, who in turn cooperated, leading to the convictions of Mejia, Salazar, two other assassins, and several high-level drug traffickers and money launderers.

At sentencing on October 30, 1996, the district court determined that Castaño's total offense level was 40 and that her Criminal History Category was I. The court refused to grant her a two-level reduction in offense level under § 3B1.2(b) of the Sentencing Guidelines, which authorizes a downward adjustment if the defendant played a "minor" role in the crime. Her sentencing range was therefore 292 to 365 months instead of 235 to 293 months. *See* U.S.S.G., Ch.5, Pt.A. The district court gave her a downward departure based on her cooperation with the government, sentencing her to 216 months in prison, five

years of supervised release, and a $50 special assessment. On March 29, 2000, the district court, having granted Castaño's motion for habeas corpus on the ground that the court had failed to advise her of her right to appeal, resentenced Castaño to the same sentence. Castaño now appeals that sentence.

## DISCUSSION

■■■ The defendant must prove by a preponderance of the evidence that she is entitled to a minor role adjustment under § 3B1.2 of the Sentencing Guidelines. *See United States v. Soto,* 959 F.2d 1181, 1187 (2d Cir.1992). We review for clear error a sentencing court's finding that a defendant did not play a minor role in the offense. *See United States v. Rahman,* 189 F.3d 88, 159 (2d Cir.1999), *cert. denied sub nom. Khallafalla v. United States,* 528 U.S. 1094, 120 S.Ct. 830, 145 L.Ed.2d 698 (2000).

Section 3B1.2 of the Sentencing Guidelines provides for a four-level decrease in offense level if the defendant's role in the criminal activity was "minimal" and a two-level decrease if the defendant's role was "minor." A minimal participant is "plainly among the least culpable of those involved in the conduct of a group. Under this provision, the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant." U.S.S.G. § 3B1.2, comment. (n. 1). "[A] minor participant means any participant who is less culpable than most other participants, but whose role could not be described as minimal ." *Id.* § 3B1.2, comment. (n. 3). A Background Note adds that an adjustment is warranted only if the defendant is "substantially less culpable than the average participant." *Id.* § 3B1.2, comment. (backg'd).

We have held that a defendant may not receive a minor role adjustment solely because she "played a lesser role than [her] co-conspirators; to be eligible for a reduc-tion, the defendant's conduct must be 'minor' ... as compared to the average participant in such a crime." *Rahman,* 189 F.3d at 159 (citing *United States v. Ajmal,* 67 F.3d 12, 18 (2d Cir.1995)).

The defendant contends that she was both less culpable than the others involved in the murder of Unanue and less culpable than the average participant in a murder-for-hire scheme. The defendant reaches this conclusion by arguing that the average participant in this and other murder-for-hire crimes are those who hire and those who murder. Even assuming that the defendant properly defines the average participant in murder-for-hire schemes, we conclude that it was not clearly erroneous for the district court to find that Castaño was not substantially less culpable than the average participant.

Castaño performed a number of functions in the murder of Unanue. First, she showed Benitez, Salazar, and Mejia a photograph of Unanue so that they could identify him. Second, she identified Unanue at the restaurant on the night of the murder. Third, she coordinated the payment of Benitez, Salazar, and Mejia. Fourth, she received money for her participation and that of her husband in the killing.

Castaño argues that one type of average participant in a murder-for-hire is one who murders, i.e., one "who undertake[s] to kill the victim in return for money." We think Castaño fits well within this definition. Although Castaño emphasizes that she did not pull the trigger, neither did anyone else in the conspiracy except for Mejia. By identifying Unanue, Castaño played as large a role in the physical act of murder as Benitez and Salazar, and a greater role than Velasco, Mena, and the members of the cartel. Moreover, like most of the other participants in the crime, she received money for her efforts.

Castaño identifies a second type of average participant in a murder for hire as one who hires, i.e., one who "conceive[s] the desire to have someone killed and who

offer[s] someone else money to achieve that desire." Although Castaño did not conceive of the murder, neither did anyone else in the conspiracy except for one high-ranking member of the drug cartel. Castaño also did not hire anyone, but she did perform an important function of one who hires: she paid the people that were hired to execute the crime.

In these circumstances, we conclude that the district court's decision to deny the defendant a minor role adjustment was not clearly erroneous.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.