UNITED STATES of America,
Appellee,

v.

Wayne JEFFERS, Defendant–
Appellant.

Docket No. 02–1286.

United States Court of Appeals,
Second Circuit.

Argued: Feb. 24, 2003.

Decided: April 8, 2003.

Lloyd Epstein, Epstein & Weil (Michael Handwerker, Hankin, Handwerker & Mazel, P.C., on the brief), New York, NY, for Defendant–Appellant.

Samantha Schreiber, Assistant United States Attorney (Roslynn R. Mauskopf, United States Attorney for the Eastern District of New York, Susan Corkery, Assistant United States Attorney, on the brief), Brooklyn, NY, for Appellee.

Before: STRAUB, KATZMANN, and RAGGI, Circuit Judges.

Judge RAGGI concurs in a separate opinion.

STRAUB, Circuit Judge.

Defendant–Appellant Wayne Jeffers ("Jeffers") appeals from a May 1, 2002 judgment of the United States District Court for the Eastern District of New York (Sterling Johnson, Jr., *Judge*) convicting him, following a jury trial, of four counts relating to the importation of a shipment of cocaine into the United States.[1] Following conviction, Jeffers was sentenced to 151 months' imprisonment and a five-year term of supervised release. On appeal, Jeffers argues that the District Court committed several errors in imposing sentence, including denying his request for "safety valve" relief and failing to make specific factual findings in denying downward adjustments for acceptance of responsibility and minor role in the offense. For the reasons that follow, we affirm the District Court's denial of the downward adjustments for acceptance of responsibility and minor role, and remand for consideration of whether Jeffers meets the requirements for safety valve relief.

The government's evidence showed that Jeffers was part of a conspiracy to import into the United States approximately 6.5 kilos of cocaine from Trinidad through John F. Kennedy International Airport in

---

**1.** Specifically, Jeffers was convicted of conspiracy to import five or more kilograms of cocaine into the United States, 21 U.S.C. §§ 963, 960(a)(1), (b)(1); conspiracy to distribute and possess with intent to distribute five or more kilograms of cocaine, 21 U.S.C. §§ 846, 841(b)(1)(A)(ii)(II); importation of five or more kilograms of cocaine, 21 U.S.C. §§ 952(a), 960(a)(1), (b)(1); and attempted possession with intent to distribute five or more kilograms of cocaine, 21 U.S.C. §§ 846, 841(b)(1)(A)(ii)(II).

Queens, New York. On June 15, 2000, airport customs officials discovered the cocaine in seven wine bottles contained in a courier's luggage. The courier's arrest led to the arrest of a co-conspirator, Newton Samuels ("Samuels"), who had arrived at the airport to greet the courier. In cooperation with law enforcement authorities, Samuels contacted his Trinidadian counterpart, Herbert Bruce ("Bruce"), by telephone and arranged to deliver the drugs to Jeffers in the parking lot of a nearby hotel. The next day, Samuels met Jeffers in the parking lot and delivered the cocaine. Jeffers and another co-conspirator were arrested. Police recovered over $5,000 in cash from Jeffers' car.

At trial, Jeffers testified in his own defense and denied any knowledge of the cocaine shipment. Jeffers testified that he met Samuels at Bruce's request, in order to give him a $1,000 loan for Bruce to obtain an airline ticket to New York. Jeffers claimed that the remaining cash in his vehicle was given to him by friends for the purchase of a used car. The jury convicted Jeffers on all four counts with which he was charged.

Following trial, the Probation Department prepared a Pre–Sentence Report ("PSR") calculating a total offense level of 34 and a criminal history category of I, resulting in a sentencing range between 151 and 188 months. The recommended offense level included a two-level enhancement for obstruction of justice based on Jeffers' perjurious testimony at trial. U.S.S.G. § 3C1.1. The PSR recommended against any downward adjustment for acceptance of responsibility or for playing a minor or minimal role in the offense. The counts for which Jeffers was convicted carry a mandatory minimum ten-year term of imprisonment.

After the PSR was prepared, but before sentencing, Jeffers changed course and agreed to provide the government with a full accounting of his role in the crime. As part of his proffer, Jeffers conceded that he had committed perjury at trial in describing the events leading up to his arrest.

At sentencing, Jeffers moved for safety valve relief and a corresponding two-level reduction in his base offense level in light of his post-conviction proffer to the government. 18 U.S.C. § 3553(f); U.S.S.G. §§ 5C1.2(a), 2D1.1(b)(6). The government did not oppose that motion and agreed that Jeffers had satisfied the requirements of the safety valve. Because the PSR was prepared prior to Jeffers' proffer, it took no position on the applicability of the safety valve. Jeffers also moved for a two-level downward adjustment for acceptance of responsibility and a two-level downward adjustment for playing a minor role in the offense. U.S.S.G. §§ 3E1.1, 3B1.2. Jeffers did not contest the two-level upward adjustment recommended in the PSR for obstruction of justice.

The District Court denied all three of Jeffers' motions. With respect to the safety valve, the court made no factual determination as to whether Jeffers was eligible for relief under the statutory criteria. Rather, the court indicated initially that even if Jeffers was eligible, the decision whether to grant safety valve relief is discretionary. Considering the "totality of the circumstances," including the defendant's perjury and his conviction for possession of over five kilograms of cocaine, the court concluded that it could not "in good conscience" grant the adjustment. At a subsequent hearing, the District Court revisited this issue in order to clarify the record. Without finding, once again, whether or not Jeffers complied with the statutory criteria, the court indicated that Jeffers' commission of perjury at trial was sufficient reason to deny him

the benefit of the safety valve. Although the District Court acknowledged our prior decision in *United States v. Schreiber*, 191 F.3d 103 (2d Cir.1999), which held that prior lies and obstructive behavior will not bar a defendant at the threshold from safety valve eligibility, the District Court nonetheless concluded that prior acts of perjury could disqualify a defendant from eligibility. Accordingly, the District Court denied Jeffers' request for a two-level downward adjustment premised on his compliance with the safety valve criteria.

With respect to Jeffers' remaining downward adjustment requests, the District Court stated: "This Court recognizes it has the authority to grant an acceptance of responsibility. I choose not to exercise that discretion. And with respect to the defendant's role, I reject his claim that he was a minor or minimal participant in this sorted [sic] affair, so I choose not to grant him any points for minor or minimal role." The District Court acknowledged Jeffers' expression of remorse at the sentencing hearing, and accordingly sentenced him at the bottom of the sentencing range.

On appeal, Jeffers contends that the District Court erred in denying the safety valve adjustment on the sole basis of his prior perjury, and that the court further erred in failing to make specific factual findings with regard to his acceptance of responsibility and minor role adjustment requests. We consider these arguments in turn.

## I. Safety Valve Relief

■ In reviewing a district court's imposition of sentence, we review factual findings for clear error and the court's interpretation of the Sentencing Guidelines *de novo*. *United States v. Champion*, 234 F.3d 106, 110 (2d Cir.2000) (per curiam).

The safety valve statute provides that for various narcotics offenses, a district court "shall impose a sentence . . . without regard to any statutory minimum sentence" if the defendant meets five statutory criteria. 18 U.S.C. § 3553(f);[2] *see also*

**2.** The statute provides, in full:

Notwithstanding any other provision of law, in the case of an offense under section 401, 404, or 406 of the Controlled Substances Act (21 U.S.C. 841, 844, 846) or section 1010 or 1013 of the Controlled Substances Import and Export Act (21 U.S.C. 960, 963), the court shall impose a sentence pursuant to guidelines promulgated by the United States Sentencing Commission under section 994 of title 28 without regard to any statutory minimum sentence, if the court finds at sentencing, after the Government has been afforded the opportunity to make a recommendation, that—

(1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;

(2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(3) the offense did not result in death or serious bodily injury to any person;

(4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and

(5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

18 U.S.C. § 3553(f).

The safety valve adjustment was enacted by Congress as a means of relieving first-time, low-level offenders from statutory mandatory minimums. *United States v. Reynoso*, 239

U.S.S.G. § 5C1.2 (incorporating statutory criteria). In turn, U.S.S.G. § 2D1.1(b)(6) instructs that for specified offenses, "[i]f the defendant meets the [safety valve] criteria set forth in ... § 5C1.2(a)[,] ... decrease [the base offense level] by 2 levels." "The plain language of the statute require[s] the district court to make its own determination whether [a defendant] satisfied the safety valve provision." *United States v. Gambino*, 106 F.3d 1105, 1110 (2d Cir.1997).[3]

The only safety valve criterion that would appear to be in dispute is the final one, requiring that *"not later than the time of the sentencing hearing,* the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan...." 18 U.S.C. § 3553(f)(5) (emphasis added). Although the government agreed that Jeffers had complied with this requirement in his proffer prior to sentencing, the District Court made no factual findings with respect to whether Jeffers met each of the safety valve criteria. Instead, the court appeared to deny the motion for a downward adjustment on the basis that Jeffers' commission of perjury at trial disqualified him from safety valve

eligibility as a threshold matter. The District Court stated: "[Perjury] is more than just a lie, perjury is a defendant having committed a crime, a felony in court and for that reason I have denied the defendant the [safety valve] protection."

We find no basis for concluding that a defendant's perjury at trial can disqualify him from safety valve eligibility at the threshold, where the defendant is otherwise found to meet the statutory criteria for relief. This conclusion flows from our decision in *United States v. Schreiber*, 191 F.3d 103 (2d Cir.1999), in which we held that so long as a defendant makes a complete and truthful proffer at the time of the commencement of the sentencing hearing, he complies with § 3553(f)(5)'s disclosure requirement even if he earlier lied to the government or obstructed its investigation. *Id.* at 106, 108–09.[4]

In reaching its decision, the *Schreiber* court relied heavily on the plain meaning of the statutory text, noting that:

> The plain words of the statute provide only one deadline for compliance .... Nothing in the statute suggests that a defendant is automatically disqualified if he or she previously lied or withheld information. Indeed, the text provides no basis for distinguishing among defen-

F.3d 143, 148 (2d Cir.2000). "Congress intended 'to remedy an inequity in the old system, which allowed relief from statutory minimum sentences' to those defendants who rendered 'substantial assistance' to the Government—usually higher-level offenders, 'whose greater involvement in criminal activity resulted in their having more information'—but effectively denied such relief to the least culpable offenders, who often 'had no new or useful information to trade.'" *Id.* (quoting *United States v. Cruz*, 156 F.3d 366, 375 (2d Cir.1998)).

3. We note that although Jeffers styled his motion below as one for safety valve relief, the fact that he was subject to a ten-year mandatory minimum sentence was of no particular

relevance. Jeffers' base offense level of 34, which included the two-level enhancement for obstruction of justice, carried a sentencing range of 151–188 months and thus exceeded the statutory minimum. As such, Jeffers' real complaint is the denial of the two-level downward adjustment provided for in U.S.S.G. § 2D1.1(b)(6).

4. As we explain later, although perjury is not a threshold bar, the sentencing court may obviously take a defendant's perjurious testimony into account in determining whether a defendant has complied with § 3553(f)(5)'s requirement of truthful disclosure by the time of sentencing.

dants who make full disclosure immediately upon contact with the government, defendants who disclose piecemeal as the proceedings unfold, and defendants who wait for the statutory deadline by disclosing "not later than" sentencing. Similarly, the text provides no basis for distinguishing between defendants who provide the authorities only with truthful information and those who provide false information before finally telling the truth.

*Id.* at 106. Thus, the statute requires full compliance, including a complete and truthful accounting of the defendant's knowledge of the crime, at the time of the commencement of the sentencing hearing—no earlier. As such, even though a defendant has been found to have committed perjury at trial, it is possible that a court could find that he has nonetheless met the fifth criterion for safety valve relief.

The *Schreiber* court also rejected the government's policy argument that unless a defendant cooperates substantially from the beginning of the proceedings, he should be ineligible for the adjustment. *Id.* at 107 ("[I]t may be that the statute fails to minimize the opportunity for gamesmanship by not requiring immediate, fully truthful disclosure, or by not imposing some overarching duty of good faith cooperation .... To the extent that this problem exists, the remedy lies in Congress, not in a judicial rewrite of plain text."). Although such policy concerns may exist with even greater force where a defendant commits perjury prior to making a truthful proffer, the language of the statute allows for no such *per se* disqualification. Further, as *Schreiber* indicates, a defendant's perjury is accounted for in the enhancement for obstruction of justice under U.S.S.G. § 3C1.1, which Jeffers received and does not contest. *Schreiber,* 191 F.3d at 108.

In support of its ruling, the District Court cited the Fourth Circuit's decision in *United States v. Fletcher,* 74 F.3d 49 (4th Cir.), *cert. denied,* 519 U.S. 857, 117 S.Ct. 157, 136 L.Ed.2d 101 (1996), in which that court determined that a sentencing judge correctly refused to grant safety valve relief. Although the sentencing court apparently did not explicitly consider the applicability of the safety valve, it denied a downward adjustment for acceptance of responsibility because the defendant committed perjury at trial. *See id.* at 56. On appeal, the Fourth Circuit concluded that "it is not illogical to assume that the judge similarly determined that [the defendant] failed to comply with the fifth condition in [18 U.S.C. § 3553(f)]." *Id.* The *Fletcher* court did not rule that committing perjury automatically disqualifies a defendant from safety valve *eligibility;* rather, its holding confirms that prior perjurious acts may affect the defendant's credibility and his corresponding ability to satisfy the safety valve's truthful disclosure requirement. *See also Schreiber,* 191 F.3d at 107 ("[A]s a practical matter, a defendant who changes his or her story to match the government's evolving knowledge of the events risks irrevocably undermining his or her credibility."); *United States v. Brownlee,* 204 F.3d 1302, 1305 (11th Cir.2000) (noting that a defendant's prior lies are relevant to the truthful disclosure requirement); *United States v. Gaviria,* 116 F.3d 1498, 1521–22 (D.C.Cir.1997) (per curiam) (affirming district court's finding that a defendant who committed perjury at trial and during presentencing proceedings did not comply with the truthful disclosure requirement), *cert. denied,* 522 U.S. 1082, 118 S.Ct. 865, 139 L.Ed.2d 763 (1998).

Accordingly, we hold that a sentencing court may not disqualify a defendant at the threshold from eligibility for

safety valve relief based solely on his commission of perjury at trial, where the defendant otherwise fulfills the statutory criteria under 18 U.S.C. § 3553(f)(1)-(5). To do so would contradict the plain language of the statute and contravene the statutory deadline for full compliance with its criteria at the time of the commencement of the sentencing hearing. A court may, of course, consider the relevance of the prior perjury or other obstructive behavior in making a factual finding as to whether the defendant has made a complete and truthful proffer in compliance with § 3553(f)(5).

Because the District Court made no independent findings with respect to Jeffers' compliance with the safety valve criteria, we vacate the District Court's denial of Jeffers' request for a downward adjustment pursuant to § 2D1.1(b)(6) and remand for the requisite factual findings.[5]

█ Prior to the District Court's clarification of the grounds of its ruling, the court suggested that safety valve relief is discretionary even where the statutory criteria are satisfied. We pause here to note our disagreement with that proposition.

At the sentencing hearing, the District Court initially indicated that it denied safety valve relief in light of the totality of the circumstances, including the fact that Jeffers perjured himself and was in possession of over five kilograms of cocaine. The court's reasoning implies that even if a defendant meets all of the statutory prerequisites for safety valve relief, a sentencing court may nonetheless deny relief in its discretion. We believe that the mandatory statutory language contained in § 3553(f) dictates otherwise.

Section 3553(f) provides: "[T]he court *shall* impose a sentence pursuant to [the sentencing] guidelines ... without regard to any statutory minimum sentence, *if* the

court finds at sentencing ... that—[the defendant complies with the five statutory criteria]." 18 U.S.C. § 3553(f) (emphasis added). Similarly, U.S.S.G. § 5C1.2(a) states: "[T]he court *shall* impose a sentence ... without regard to any statutory minimum sentence, *if* the court finds that the defendant meets the criteria in 18 U.S.C. § 3553(f)(1)-(5) ...." U.S.S.G. § 5C1.2(a) (emphasis added). The corresponding Application Note indicates that "[a] defendant who meets the criteria under this section is exempt from any otherwise applicable statutory minimum sentence of imprisonment ...." *Id.* cmt. n. 9.

The plain meaning of these provisions limits a court's discretion to determining whether or not the statutory criteria have been met; once it has been determined that they have, the court is required to disregard any mandatory minimum in imposing sentence. *See, e.g., United States v. Chen*, 127 F.3d 286, 290 (2d Cir.1997) ("[A] sentencing court *must* disregard statutorily mandated minimum sentences for certain narcotics offenses where the defendant [complies with § 3553(f)(1)-(5) ].") (emphasis added); *Brownlee*, 204 F.3d at 1304 (a district court is "require[d]" to disregard a mandatory minimum where defendant qualifies for the safety valve); *United States v. Hendricks*, 171 F.3d 1184, 1186 (8th Cir.1999) ("The application of the safety-valve provision is not discretionary once the court determines that the defendant meets the qualifications."); *United States v. Real–Hernandez*, 90 F.3d 356, 361 (9th Cir.1996) ("[I]f on remand [the defendant] carries his burden of showing that he qualifies for relief under the safety valve, the district court has no discretion to withhold application of section 5C1.2." (internal citation omitted)). Accordingly, we reject the view initially

---

**5.** The government concedes that remand is required.

expressed by the District Court that safety valve relief is discretionary.

Further, if the District Court finds that Jeffers has satisfied the safety valve criteria, he would ordinarily be entitled to a two-level downward adjustment in his offense level as provided for in U.S.S.G. § 2D1.1(b)(6). That provision instructs that in calculating a sentence for specified narcotics offenses: "If the defendant meets the criteria set forth in [§ 5C1.2(a) ], decrease [the offense level] by 2 levels." U.S.S.G. § 2D1.1(b)(6). *See, e.g., United States v. Osei,* 107 F.3d 101, 103–05 (2d Cir.1997) (per curiam) (referring to the "apparent mandate" of § 2D1.1(b)(6) [then § 2D1.1(b)(4) ], and instructing that on remand, the defendant should be given the adjustment if he meets the safety valve criteria); *cf. United States v. Leonard,* 157 F.3d 343, 346 (5th Cir.1998) (per curiam) (concluding that the

language of § 2D1.1(b)[ (6) ] "is not discretionary").[6]

## II. Remaining Downward Adjustment Motions

Jeffers also challenges the District Court's refusal to grant downward adjustments for acceptance of responsibility and minor role in the offense. *See* U.S.S.G. §§ 3E1.1, 3B1.2. With respect to both motions, Jeffers claims that the District Court failed to make sufficient findings of fact.

▆ A district court's determination that a defendant does not meet the criteria for a downward adjustment is reviewed for clear error, and we will reverse such a conclusion only for abuse of discretion. *United States v. Colon,* 220 F.3d 48, 51 (2d Cir.2000); *United States v. Castano,* 234 F.3d 111, 113 (2d Cir.2000). "After providing a procedure that affords parties the opportunity to be heard adequately, the

---

**6.** We need not reach the issue of whether a departure from § 2D1.1(b)(6) would be permissible in this case, as the concurrence concludes. The government agrees that remand is the appropriate remedy, as the District Court's underlying rationale for invoking its discretion to deny the adjustment is unclear, and in any event, the District Court made no specific findings to support its decision. Accordingly, the government did not argue on appeal that the District Court had departure authority under § 2D1.1(b)(6). The district court is free to consider this issue on remand.

Although the concurrence advances cogent arguments in support of this departure authority, we regard the issue as being far from clear, and decline to definitively decide the matter in this procedural context, without the benefit of appropriate briefing. We pause only to note a few relevant points. First, § 2D1.1(b)(6) is no less binding on sentencing courts than 18 U.S.C. § 3553(f). *See United States v. Guevara,* 277 F.3d 111, 118 (2d Cir. 2001) (noting that the Sentencing Guidelines are promulgated by the United States Sentencing Commission pursuant to the Sentencing Reform Act of 1984 and have the full force and effect of binding law).

Second, § 2D1.1(b)(6) is contained in Chapter 2 of the Guidelines which contains highly specific instructions for determining the appropriate base offense level. "Because it is the only link between the defendant's offense of conviction and his or her sentence, the offense guideline section is the foundation of the sentence." *United States v. Saavedra,* 148 F.3d 1311, 1314 (11th Cir.1998). Thus, permitting departures at the offense level calculation stage of the sentencing process, rather than in applying the catch-all departure provision of U.S.S.G. § 5K2.0, may well place "the departure cart before the Guidelines Range horse." *United States v. Milan,* 304 F.3d 273, 296 (3rd Cir.2002).

Third, permitting departures from § 2D1.1(b)(6) simply raises the difficult question of whether a defendant who meets all five safety valve factors can nonetheless be considered outside the "heartland" of the guideline.

Finally, although the application notes to other offense level guidelines specifically indicate that a departure may be warranted, *see* U.S.S.G. § 2A1.1, cmt. n. 1; § 2C1.7, cmt. n. 5, the commentary to § 2D1.1 contains no similar direction relating to the safety valve adjustment.

court [must] clearly state its resolution of any disputed factors predicated upon its findings." *United States v. Palta*, 880 F.2d 636, 641 (2d Cir.1989). A court's factual findings "must be made with sufficient clarity to permit appellate review." *Gambino*, 106 F.3d at 1111 (internal quotation marks omitted). A court may, however, rely upon and incorporate into its judgment the factual assertions set forth in the PSR. *United States v. Martin*, 157 F.3d 46, 49–50 (2d Cir.1998). "Further factual findings will be required where we are unable to discern from the record the basis of the district court's ruling." *Gambino*, 106 F.3d at 1111.

## A. Acceptance of Responsibility

■ Jeffers moved for a two-level reduction in his offense level based on his acceptance of responsibility prior to sentencing. *See* U.S.S.G. § 3E1.1. "A sentencing court's decision to grant or deny a § 3E1.1 reduction depends, in large part, on that Court's determination of the credibility of the defendant," *United States v. Rivera*, 96 F.3d 41, 43 (2d Cir.1996), and "th[is] determination ... should not be disturbed unless it is without foundation." *United States v. Lanese*, 890 F.2d 1284, 1292 (2d Cir.1989) (quoting U.S.S.G. § 3E1.1, cmt. n. 5), *cert. denied*, 495 U.S. 947, 110 S.Ct. 2207, 109 L.Ed.2d 533 (1990). We find no clear error in the District Court's denial of Jeffers' motion, and we reject his claim that the court's findings are insufficient to permit adequate review.

U.S.S.G. § 3E1.1 provides for a two-level downward adjustment "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense." The corresponding Application Note indicates that a court should consider, *inter alia*, whether a defendant "truthfully admit[s] the conduct comprising the offense(s) of conviction ... [and] the timeliness of the defendant's conduct in manifesting the acceptance of responsibility." *Id.* cmt. n. 1(a), (h). Furthermore, "[t]his adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse. Conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction. In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. ... In each such instance, however, a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct." *Id.* n. 2.

■ In denying the motion, the District Court stated that "[t]his Court recognizes it has the authority to grant an acceptance of responsibility. I choose not to exercise that discretion." Although the District Court did not elaborate further at that stage, the court indicated in its judgment that it adopted "the factual findings ... in the [PSR]." The PSR recommended against an adjustment for acceptance of responsibility based on Jeffers' decision to go to trial and his commission of perjury. As such, the record sufficiently explains the rationale for the District Court's denial of Jeffers' motion, and although the PSR was prepared prior to Jeffers' proffer, we find no extraordinary circumstance that would have counseled a different result. *See generally United States v. Paredes-Batista*, 140 F.3d 367, 380–81 (2d Cir.), *cert. denied*, 525 U.S. 859, 119 S.Ct. 143, 142 L.Ed.2d 116 (1998). We therefore affirm.

## B. Minor Role

█ Jeffers also moved for a two-level reduction in his base offense level for playing a minor role in the offense. U.S.S.G. § 3B1.2. A minor participant is any participant "who is less culpable than most other participants, but whose role could not be described as minimal." *Id.* n. 5. An adjustment is warranted only if the defendant is "substantially less culpable than the average participant." ' *Id.* n. 3(A). "[A] defendant may not receive a minor role adjustment solely because [ ]he played a lesser role than [his] co-conspirators; to be eligible for a reduction, the defendant's conduct must be 'minor' . . . as compared to the average participant in such a crime." *Castano*, 234 F.3d at 113.

The District Court concluded at sentencing that "with respect to the defendant's role, I reject his claim that he was a minor or minimal participant in this sorted [sic] affair, so I choose not to grant him any point s for minor or minimal role." Jeffers' conviction related to his participation in the importation of 6.5 kilos of cocaine worth approximately $130,000, and his agreement to take possession thereof. Jeffers' PSR, which the District Court adopted, described the events leading up to his arrest and concluded that "[t]he defendant's role in the instant offense was to accept receipt of the cocaine and his role was not minor or minimal; no mitigating role adjustment is warranted." Further, as part of his pre-sentencing proffer, Jeffers admitted that he went to the airport knowing that there were drugs and that he agreed to take possession of the cocaine.

We conclude that the District Court's statements, together with the description of Jeffers' role contained in the PSR, provides a sufficient explanation of the District Court's reasoning, and we find no clear error in its decision to deny the motion. Accordingly, the District Court's denial of a downward minor role adjustment is affirmed.

## CONCLUSION

For the reasons set forth above, the District Court's denial of a downward adjustment based on Jeffers' compliance with the safety valve is VACATED and the case is REMANDED for further proceedings consistent with this opinion. The District Court's denials of Jeffers' motions for downward adjustments based on acceptance of responsibility and minor role in the offense are AFFIRMED.

RAGGI, Circuit Judge, concurring in the judgment.

In sentencing Wayne Jeffers for his involvement in the importation of 6.5 kilograms of cocaine, the able district judge who presided over Jeffers' trial concluded that he could not "in good conscience" give the defendant safety valve consideration in light of his prior perjury. In so ruling, the judge suggested that safety valve relief was "discretionary," and that he was not required to grant it in Jeffers' case. This presents us with two questions: (1) whether prior perjury necessarily disqualifies an individual from safety valve consideration; and (2) if not, whether a district court retains any discretion in applying the safety valve in such a case. Like my colleagues, I answer the first question in the negative and agree to vacate the judgment and to remand the case for further proceedings. Unlike my colleagues, however, I think the answer to the second question differs depending on whether the relief demanded arises under the statutory safety valve provision, 18 U.S.C. § 3553(f)—which was not at issue in Jeffers' case—or a safety valve-related guideline, U.S.S.G. § 2D1.1(b)(6)—which was. I write separately to explain why I think a district judge retains discretion to depart from

U.S.S.G. § 2D1.1(b)(6) when presented with unusual circumstances that take a case outside that guideline's heartland.

The term "safety valve" is frequently used by courts and lawyers to refer collectively to 18 U.S.C. § 3553(f), U.S.S.G. § 5C1.2, and U.S.S.G. § 2D1.1(b)(6). In fact, there are important distinctions among the three provisions that affect the degree of discretion a district judge has in applying each. Specifically, 18 U.S.C. § 3553(f), enacted as part of the Mandatory Minimum Sentencing Reform Act of 1994, Pub.L. No. 103–322, tit. VIII, § 80001(a), 108 Stat. 1796, 1985–86, represents a clear congressional choice to exempt certain low-level drug defendants from the mandatory minimum sentences outlined in 21 U.S.C. § 841(b) and to permit their cases to be reviewed pursuant to the somewhat-more-flexible sentencing guidelines. See United States v. Reynoso, 239 F.3d 143, 148 (2d Cir.2000) (reviewing the legislative history of § 3553(f)). By its express terms, the statute is mandatory: a court "shall impose" sentence pursuant to the guidelines rather than the statutory minimums if a defendant satisfies five specific criteria. See 18 U.S.C. § 3553(f)(1)-(5) (set forth in note 2 of the Court's opinion). Both the statute's mandate and its criteria are repeated almost verbatim in U.S.S.G. § 5C1.2, the statute's implementing guideline. U.S.S.G. § 2D1.1(b)(6), on the other hand, has no congressional pedigree. Promulgated by the Sentencing Commission at the same time as U.S.S.G. § 5C1.2(a), U.S.S.G. § 2D1.1(b)(6) is referred to as part of the safety valve because it borrows the five criteria of U.S.S.G. § 5C1.2(a) (themselves derived from 18 U.S.C. § 3553(f)), to identify those low-level drug defendants whose quantity-driven base offense levels should be decreased by two.[1]

Our review of the District Court's decision to deny Jeffers a § 2D1.1(b)(6) guideline adjustment based on trial perjury necessarily begins with the fifth safety valve criterion, which requires that "not later than the time of the sentencing hearing," a defendant truthfully provide to the government all information he has concerning or relating to his criminal conduct. 18 U.S.C. § 3553(f)(5); U.S.S.G. § 5C1.2(a)(5). We considered this criterion in United States v. Schreiber, 191 F.3d 103 (2d Cir.1999), a case in which the defendant was denied § 3553(f) relief based on a string of false proffers to prosecutors, and there concluded that "lies and omissions do not disqualify a defendant from safety valve relief so long as the defendant makes a complete and truthful proffer not later than the commencement of the sentencing hearing," id. at 108–09. The District Court sought to distinguish Jeffers' case from Schreiber, observing that "perjury ... is more than just a lie, perjury is a defendant having committed a crime, a felony in court." No one could quarrel with this stern view of perjury. Nevertheless, because we are bound by Schreiber, which itself involved felonious lies, albeit told outside the courtroom, see 18 U.S.C. § 1001, I am reluctantly compelled to join my colleagues in concluding that trial perjury does not by itself prevent a defendant from satisfying the fifth safety valve criterion.[2]

---

1. As we made plain in United States v. Osei, 107 F.3d 101 (2d Cir.1997) (per curiam), U.S.S.G. § 2D1.1(b)(6) operates independently from 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2(a), in that its base offense level adjustment is available to defendants who satisfy the five criteria even if they do not face mandatory minimum sentences. Id. at 104.

2. To distinguish Jeffers' perjury from Schreiber's lies, the District Court relied on United States v. Fletcher, 74 F.3d 49 (4th Cir.1996), which states:

Our conclusion that perjury does not foreclose satisfaction of the safety valve's fifth criterion leaves open the question of whether the unusual circumstances of Jeffers' belated proffers, made only after his perjurious attempt to avoid conviction had failed, are sufficiently outside the heartland of U.S.S.G. § 2D1.1(b)(6) to support a guideline departure. My colleagues choose not to reach this issue. They do, however, note their disagreement with the District Court's suggestion "that safety valve relief is discretionary even where the statutory criteria are satisfied." [*See ante* at 100]. Because I am concerned that this may create some confusion as to the proper scope of proceedings on remand, I

would distinguish the statutory relief provided in 18 U.S.C. § 3553(f) from the guideline adjustment provided in U.S.S.G. § 2D1.1(b)(6) and acknowledge a district court's discretion to depart from the guideline in unusual circumstances.

My colleagues derive their rejection of the District Court's reference to safety valve discretion from the statutory requirement of 18 U.S.C. § 3553(f), reiterated in U.S.S.G. § 5C1.2(a), that district courts "shall impose" sentences pursuant to the guidelines rather than the mandatory minimums if a defendant satisfies the five safety valve criteria. From this language, which is not found in U.S.S.G. § 2D1.1(b)(6),[3] they reach a conclusion

At the sentencing hearing, the district court found Fletcher ineligible for the acceptance of responsibility reduction in U.S.S.G. § 3E1.1(a) because he perjured himself at trial. The judge determined that Fletcher failed to warrant the reduction despite "coming clean" at sentencing by admitting that he had lied at trial by fabricating an alibi. In light of that ruling, it is not illogical to assume that the judge similarly determined that Fletcher failed to comply with the fifth condition in 18 U.S.C. § 3553(f): that the defendant has truthfully provided to the government all information and evidence he has concerning the offense and others related to it. 18 U.S.C. § 3553(f)(5); U.S.S.G. § 5C1.2(5).

*Id.* at 56. My colleagues observe that *Fletcher* "did not rule that committing perjury automatically disqualifies a defendant from safety valve *eligibility*; rather, its holding confirms that prior perjurious acts may affect the defendant's credibility and his corresponding ability to satisfy the safety valve's truthful disclosure requirement." [*See ante* at 99] (emphasis in original). I am not persuaded that *Fletcher* speaks so clearly. The *Fletcher* court's references to "that ruling" and to a "similar[ ] determin[ation]" in the quoted passage's last sentence appear to allude back to the district judge's decision to deny Fletcher a § 3E1.1(a) adjustment "because he perjured himself at trial" before " 'coming clean' at sentencing." In this light, I cannot discern from the quoted passage whether trial perjury was (1) a factor the district judge weighed in

deciding that Fletcher's post-conviction proffer was not credible, as my colleagues suggest, or (2) the singular reason why Fletcher was denied safety valve consideration (just as he was denied acceptance credit) despite his "coming clean" after conviction.

3. Rather than employ the "shall impose" mandate of 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2(a), U.S.S.G. § 2D1.1(b)(6) simply states a directive to "decrease" a base offense level if specific criteria are satisfied. Similar directives to increase or decrease offense levels are found throughout the guidelines. *See, e.g.,* U.S.S.G. § 2J1.6(b)(1)(A) (if defendant voluntarily surrendered within 96 hours of time to report, "*decrease* by 5 levels"); U.S.S.G. § 3A1.1(b)(1) (if defendant knew or should have known of victim's vulnerability, "*increase* by 2 levels"); U.S.S.G. § 3E1.1 (if defendant accepts responsibility for offense, "*decrease* the offense level by 2 levels") (all emphases added).

My colleagues cite to *United States v. Osei*, 107 F.3d at 103, for its reference to the "apparent mandate of § 2D1.1(b)(4)" (the predecessor to U.S.S.G. § 2D1.1(b)(6)). [*See ante* at 100–101]. In context, however, the *Osei* reference suggests simply that the safety valve guideline, like any other, must be applied to all cases that fall within the heartland, whether or not a defendant is subject to a mandatory minimum. *United States v. Osei*, 107 F.3d at 103–05. *Osei* did not address the question of whether district courts could depart from

with which I do not quarrel, i.e., if the five criteria are satisfied, a "court is required to disregard any mandatory minimum in imposing sentence." [*See ante* at 100]. But the issue in Jeffers' case was never whether the defendant should receive a mandatory minimum rather than guideline sentence. Indeed, Jeffers' guideline range far exceeded the mandatory minimum provided in 21 U.S.C. § 841(b)(1)(A), so the relief provided by 18 U.S.C. § 3553(f) was meaningless to him. The single safety valve issue in Jeffers' case was whether the District Court was required to award a two-level adjustment pursuant to U.S.S.G. § 2D1.1(b)(6) despite defendant's trial perjury, or whether it had any discretion to depart from this guideline. Because § 3553(f)'s mandate to ignore statutory minimums simply does not speak to this question, it cannot resolve the issue of district court discretion to depart from U.S.S.G. § 2D1.1(b)(6) in Jeffers' case.

For that answer, it is necessary to look to the Sentencing Guidelines Manual. There, the Sentencing Commission explains that "each guideline" is intended to "carv[e] out a 'heartland,' a set of typical cases embodying the conduct that each guideline describes." U.S. Sentencing Guidelines Manual ch. 1, pt. A, subpt 4(b). In "an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted." *Id.* This discretion to depart from the guidelines in appropriate cases is expressly referenced by Congress in 18 U.S.C. § 3553(b), which states that a "court shall impose a sentence of the kind, and within the range" provided in the guidelines "unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." *See Koon v. United States,* 518 U.S. 81, 93–96, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996) (recognizing district court discretion to depart from the guidelines in atypical cases outside the heartland considered by the Sentencing Commission in formulating each guideline). Thus, we have previously held that "absent express prohibition," a sentencing court applying the guidelines "is free to consider, in an unusual case, whether or not the factors that make it unusual . . . are present in sufficient kind or degree to warrant a departure." *United States v. Tenzer,* 213 F.3d 34, 43 (2d Cir.2000) (quoting *United States v. Core,* 125 F.3d 74, 77 (2d Cir.1997) (quoting *United States v. Rivera,* 994 F.2d 942, 949 (1st Cir.1993) (Breyer, C.J.))); *see United States v. Adelman,* 168 F.3d 84, 86–87 (2d Cir.1999) (approving upward departure where threatening communications guideline did not consider multiple victim scenario).

Applying these principles to U.S.S.G. § 2D1.1(b)(6) yields two conclusions: (1) that guideline may "linguistically appl[y]" to every case in which a defendant satisfies the five safety valve criteria set forth in 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2(a); nevertheless (2) because there is no express prohibition, district courts remain free to depart when an atypical case falls outside § 2D1.1(b)(6)'s heartland. *See also* U.S.S.G. § 5K2.0 (Policy Statement) ("Any case may involve factors in addition to those identified that have not been given adequate consideration by the Commission.").

An example helps to illustrate the point. The first safety valve criterion uses criminal history to ensure that safety valve relief is afforded only to low-level drug

U.S.S.G. § 2D1.1(b)(6) in cases falling outside the heartland.

defendants: a defendant cannot "have more than 1 criminal history point, as determined under the sentencing guidelines." 18 U.S.C. § 3553(f)(1); U.S.S.G. § 5C1.2(a)(1). The guidelines, however, do not award criminal history points for foreign convictions. *See* U.S.S.G. § 4A1.2(h). Thus, a defendant with a significant record for drug trafficking outside the United States might still have only 0–1 criminal history points and technically qualify for safety valve consideration. In such a case, the mandatory language of 18 U.S.C. § 3553(f) may well require a court to use the guidelines rather than the statutory minimums in calculating that defendant's sentence (assuming he satisfies the other four criteria), but, once a case is within the guidelines, the court should be able to consider whether the foreign convictions were so numerous or serious as to take the defendant outside the heartland of § 2D1.1(b)(6). *See generally* U.S.S.G. § 4A1.3 (Policy Statement) (recognizing propriety of criminal history departure where guidelines' failure to consider foreign convictions inadequately reflects risk of defendant's recidivism).

The same analysis pertains to the fifth safety valve criterion. *Schreiber* holds that it linguistically applies even to a defendant who chronically lies to the government as long as he proffers truthfully before the start of his sentencing hearing. 191 F.3d at 108–09. It is most unlikely, however, that the Commission envisioned such a scenario when it provided for an offense level adjustment in U.S.S.G. § 2D1.1(b)(6). Even more atypical—one hopes—would be a case such as Jeffers' where a defendant boldly perjures himself at trial and only after failing to avoid conviction makes a belated safety valve proffer to the government. As we observed in *United States v. Reynoso,* Congress's intent in enacting the statutory safety valve, 18 U.S.C. § 3553(f), was "to provide relief . . . to those defendants who, *but for their minor roles in criminal activity,* could (and would) have provided the Government with substantial assistance," 239 F.3d at 148 (emphasis in original). By adopting the same criteria in U.S.S.G. § 2D1.1(b)(6), the Commission signaled its intent to afford relief to the same persons. A defendant who perjures himself at trial would not likely fall within this heartland for, in such a case, it would not be simply the defendant's low-level role that precluded him from providing the government with substantial assistance; it would be his own willful, indeed, criminal conduct in obstructing justice in the one case about which he did have significant information, i.e., his own.

In other contexts, the guidelines already recognize that perjury is relevant to sentencing and can support both an offense level enhancement for obstruction of justice under U.S.S.G. § 3C1.1 and denial of acceptance of responsibility consideration under U.S.S.G. § 3E1.1. *See* Application Note 4 to U.S.S.G. § 3E1.1 ("Conduct resulting in an enhancement under § 3C1.1 . . . ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct."); *see also United States v. Echevarria,* 33 F.3d 175, 179 (2d Cir. 1994) (rejecting double counting challenge to district court's reliance on same false statements to support § 3C1.1 enhancement and § 3E1.1 denial). It is entirely consistent with this reasoning to acknowledge district court discretion to consider whether the circumstances of a defendant's perjury and his belated truthful proffer are so outside the safety valve heartland as to support a departure from U.S.S.G. § 2D1.1(b)(6). *See United States v. Campbell,* 967 F.2d 20, 25 (2d Cir.1992) (holding that defendant's single act may be relevant to different guideline considerations).

At first glance, it may seem curious that on the same facts a court would be obliged to grant relief under 18 U.S.C. § 3553(f) yet retain discretion to depart from U.S.S.G. § 2D1.1(b)(6). There is, however, an interesting irony in the mandate of § 3553(f) that explains the seeming incongruity. In essence, what Congress mandates in § 3553(f) is not a restriction on district courts' sentencing discretion, but rather a restoration of some measure of the discretion formerly removed by the mandatory minimum terms in 21 U.S.C. § 841(b). Viewed in this light, *Schreiber*'s strict construction of the safety valve's fifth criterion promotes Congress's intent to bring a significant number of mandatory minimum cases back within the guideline scheme. Nothing in *Schreiber* or 18 U.S.C. § 3553(f), however, suggests an intent to limit a district court's discretion within the guideline scheme to consider whether prior lies, a history of foreign convictions, or any other unusual factor, takes a case outside the heartland. *See generally United States v. Schreiber*, 191 F.3d at 106 (noting district court's view that but for mandatory minimums, totality of circumstances would warrant departure from guidelines and imposition of non-incarceratory sentence).

In sum, I join in that part of the Court's opinion affirming the District Court's decision to deny Jeffers guideline adjustments for acceptance of responsibility and minor role. I similarly join in its conclusion that Jeffers' trial perjury does not, by itself, disqualify him from safety valve eligibility. But I depart from my colleagues' rejection of district court discretion in the application of safety valve relief. While I agree that the statutory mandate of 18 U.S.C. § 3553(f) compels a court to sentence a defendant who satisfies the safety valve's five criteria pursuant to the sentencing guidelines without regard to any statutory minimums, I would nevertheless acknowledge the District Court's discretion on remand to depart from U.S.S.G. § 2D1.1(b)(6) if it determines that Jeffers' trial perjury takes his case outside that guideline's heartland.