UNITED STATES of America,
Appellee,

v.

Robert SCHREIBER, Michael Franks,
Brent Gilpin, and Susan Scainetti,
Defendants,

John Bianco, Defendant–Appellant.

Docket No. 98–1462

United States Court of Appeals,
Second Circuit.

Argued: May 13, 1999

Decided: Sept. 02, 1999

Diana D. Parker, New York, N.Y. (Elizabeth Small, Morvillo, Abramowitz, Grand, Iason & Silberberg, P.C., New York, NY, Valerie Amsterdam, James Branden, Amsterdam & Branden, of counsel), for Defendant-Appellant.

Richard Sullivan, Assistant United States Attorney, New York, N.Y. (Mary Jo White, United States Attorney for the Southern District of New York, Ira M. Feinberg, Assistant United States Attorney, New York, NY, of counsel), for Appellee.

BEFORE: MESKILL, PARKER, and SOTOMAYOR, Circuit Judges.

PARKER, Circuit Judge:

Defendant-appellant John Bianco appeals from the judgement of the United States District Court for the Southern District of New York (Loretta A. Preska, Judge) entered August 20, 1998, convicting appellant, after his plea of guilty, of conspiracy to distribute, and to possess with intent to distribute, more than 100 pounds of marijuana. Appellant argues on appeal that he was sentenced incorrectly.

At sentencing, the district court set the adjusted offense level at thirty-one. Given appellant's criminal history category, this created a guideline range of 108 to 135

months. The district court departed downward and sentenced appellant to the statutory minimum of sixty months.

Appellant's sole contention on appeal is that the district court erred in denying him the benefit of the "safety valve" created by 18 U.S.C. § 3553(f). This provision eliminates the applicability of statutory minimum sentences if the defendant meets five criteria. There is no dispute in this case that the first four criteria are satisfied. The fifth and final criterion is disputed, and reads as follows:

> (5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

18 U.S.C. § 3553(f)(5); *see* U.S.S.G. § 5C1.2(5).

The district court found that appellant was ineligible for safety valve relief—and thus ineligible to be sentenced below the sixty-month statutory minimum—because he repeatedly lied to the government about the nature of the conspiracy and his participation in it before attempting to make a complete and truthful proffer. We review the district court's fact-finding under § 3553(f) for clear error and review its interpretation of the statute *de novo*. *See United States v. Ortiz*, 136 F.3d 882, 883 (2d Cir.1997) (per curiam), *cert. denied*, —— U.S. ——, 118 S.Ct. 1104, 140 L.Ed.2d 158 (1998).

## I. BACKGROUND

### A. *The Events*

Between 1988 and 1991, appellant and his wife Susan Scainetti were involved in a conspiracy that distributed over 1000 kilograms of marijuana. On October 13, 1991, Scainetti was arrested in an undercover sting, and on December 9, 1991, Scainetti, appellant, and three others were indicted for conspiracy to distribute marijuana and related offenses. Appellant agreed to meet with the government "with a view toward cooperating."

In December 1991 and March 1992, appellant attended at least two proffer sessions with the government. At these sessions, appellant lied to the government concerning the scope of the marijuana operation. It is undisputed that appellant's lies were motivated in part by his desire to protect his brothers Donald and Christopher Bianco from prosecution. The precise extent of the lies is not relevant to this appeal. The district court subsequently found, and appellant does not now dispute, that appellant's failure to give the government complete and truthful information at those proffer sessions was intended to, and had the effect of, "significantly obstruct[ing]" the investigation and delaying the "round up" of the other co-conspirators until the spring of 1994. After these initial proffers, appellant entered into a cooperation agreement with the government, and on March 19, 1992, he pleaded guilty.

By the spring of 1994, the government had developed evidence that the marijuana operation was much larger than appellant had led them to believe. On May 24, 1994, appellant attended another proffer session but again lied about the facts of the marijuana operation. During this proffer session, the government withheld from appellant the fact that it knew he was lying.

On June 12, 1995, warrants were issued for the arrests of twenty-one co-conspirators. On June 29, 1995, numerous defendants were indicted, including Christopher and Donald Bianco. After the indictments, the government requested another meeting with appellant, but appellant refused, telling the government that it could "tear up" his cooperation agreement.

Sometime in 1996, appellant contacted the government and sought a new proffer session to satisfy the safety valve provisions. Appellant asserts that he came forward at that time because his recently retained new counsel urged him to do so. The government told appellant that a proffer session would have to wait until after Donald Bianco's trial.

The record is silent as to a number of potentially important facts concerning appellant's attempt to meet with the government in 1996.[1] For example, the record does not indicate how many of the co-conspirators had already pleaded guilty at that point, how much information about the conspiracy the government had already obtained, or how much appellant knew about these developments. The only evidence that explains why the government refused to meet with appellant in 1996 is the uncontroverted assertion of appellant's lawyer that the government was simply too busy to do so prior to Donald Bianco's trial.

With the exception of Donald and Christopher Bianco, all of the defendants pleaded guilty before trial. Donald Bianco was tried and convicted in February 1997. At the trial, numerous co-conspirators testified against him. After the trial, appellant made another request for a proffer session. The government told appellant that it believed that he had waived his right to make such a proffer.

Appellant was sentenced on July 24, 1998. Shortly prior to sentence, appellant forwarded two documents which he claims constitute truthful disclosure of all the information and evidence he had concerning the conspiracy, thus bringing him into compliance with the safety valve statute. The first document was a June 19, 1998, letter to the probation department written by his attorneys. The second was a July 23, 1998, affidavit sworn to by appellant. Appellant proffered the information in written form because the government continued to refuse to meet with him. It is undisputed that the government received these materials prior to the sentencing hearing. The completeness and truthfulness of these proffers were not litigated below, and the district court made no findings on this point.

In September 1998, Christopher Bianco, who had been a fugitive, surrendered and pleaded guilty to conspiracy to distribute marijuana.

## B. *The District Court's Findings*

Focusing on the government's refusal to meet with appellant in 1996 and thereafter, the district court framed the issue as "whether the defendant should be given another chance" to provide information to the government so as to comply with paragraph (5) of the safety valve statute given that he had lied in his initial proffers and had refused to meet with the government in 1995. Relying on *United States v. Marin,* 144 F.3d 1085 (7th Cir.), *cert. denied,* —— U.S. ——, 119 S.Ct. 265, 142 L.Ed.2d 218 (1998), the district court held that a defendant who provides untruthful information, and who refuses a subsequent opportunity to make further proffers, need not be given a final opportunity to correct past lies and omissions. The district court quoted passages from *Marin* stating that the purpose of § 3553(f) is to benefit "only those defendants who truly cooperate," and that it is the defendant who must demonstrate that he or she has made a good faith attempt to cooperate. *Marin,* 144 F.3d at 1091, 1094 (citation omitted).

---

1. The parties' discussion of their negotiations leads us to believe that potentially relevant information exists outside the record. When we refer to the record in this opinion, we refer to the material in the appendices and the material forwarded pursuant to Fed. R.App. P. 11. If there are additional relevant materials in the record on appeal, we have not located them and neither party has directed our attention to them. *See* Fed. R.App. P. 30(a)(1)(D) (appendix should contain parts of the record to which the parties wish to direct the court's attention).

The district court stated, "Defendants must provide truthful information from the moment they meet with the prosecutors, and this is particularly the case here where the lies were not the result of some mistake or inadvertent omission but were from the beginning the result of a deliberate attempt to prevent a further investigation." The district court also noted that appellant's motivation and decision to tell the truth "only arose after [his] lies had been exposed."

After analyzing various requests for downward departure, the district court stated:

> [I]f the only question before me were merely departures, I would agree that the combination of factors here presented [suggest] that no incarceration is required. To get to that result, however, I must find that [appellant] is entitled to safety valve treatment which requires me to find that the government must give him, in essence, a fourth bite at the apple and that I cannot find for the reasons I have stated earlier.

The court sentenced appellant to sixty months in prison, and this appeal followed.

## II. DISCUSSION

■ Appellant argues that by coming forward with complete and truthful information "not later than the time of the sentencing," he complied with 18 U.S.C. § 3553(f)(5) and thus was entitled to benefit from the safety valve, regardless of his prior lies and obstructions. The government argues that appellant's repeated lies and obstructions rendered him ineligible for safety valve relief.

Assuming that appellant's final proffers were complete and truthful, we find that appellant complied with subsection five by coming forward "not later than the time of the sentencing hearing." 18 U.S.C. § 3553(f)(5). The plain words of the statute provide only one deadline for compliance, and appellant met that deadline. Nothing in the statute suggests that a defendant is automatically disqualified if he or she previously lied or withheld information. Indeed, the text provides no basis for distinguishing among defendants who make full disclosure immediately upon contact with the government, defendants who disclose piecemeal as the proceedings unfold, and defendants who wait for the statutory deadline by disclosing "not later than" sentencing. Similarly, the text provides no basis for distinguishing between defendants who provide the authorities only with truthful information and those who provide false information before finally telling the truth.

To the extent that we have previously suggested that the statute requires a defendant to "cooperate" with the government, *United States v. Cruz*, 156 F.3d 366, 375 (2d Cir.1998) (quoting *United States v. Arrington*, 73 F.3d 144, 148 (7th Cir. 1996)), and to do so in "good faith," *United States v. Gambino*, 106 F.3d 1105, 1110 (2d Cir.1997) (quoting *Arrington*, 73 F.3d at 148), we now clarify that a defendant may meet these requirements by volunteering to the government complete and truthful information no later than the time of sentencing. The text of § 3553(f)(5) supports no other reading.

The government offers no rule of construction that would allow us to look beyond the statute's plain meaning in this case. *Cf. Crooks v. Harrelson*, 282 U.S. 55, 60, 51 S.Ct. 49, 75 L.Ed. 156 (1930) (plain meaning may be avoided in "rare and exceptional circumstances" where the result is absurd and "the absurdity [is] so gross as to shock ... common sense"); *United States v. Reyes*, 116 F.3d 67, 71 (2d Cir.1997) (plain meaning of statute controls except where this will produce a result "demonstrably at odds" with legislative intent) (citation omitted).

Nevertheless, the government raises various policy arguments to justify engrafting onto the statute the requirement that a defendant must cooperate with the government in good faith even beyond the textual mandate. The government argues

that good faith cooperation extends to a defendant's "conduct as a whole throughout the course of his dealings with the Government." Defendants whose "conduct as a whole" is uncooperative are, according to the government, ineligible for safety valve relief, regardless of their literal compliance with § 3553(f).

We decline to adopt the government's view. The government's argument relies heavily on discussion contained in *Marin*. *Marin* identified the perverse result of permitting a defendant to provide an untruthful version of the events, "lie in wait" until the lies were exposed at sentencing, and then modify the story to comport with the government's evidence. A defendant who could gain the benefit of the safety valve in such a case would have a reduced incentive to tell the truth, and the government would receive an accurate version only if it was able to "corner" the defendant. *See Marin*, 144 F.3d at 1094. *Marin* relied on this concern to set a deadline for compliance "by the time of the commencement of the sentencing hearing." *Id.* at 1095.

We agree with *Marin* that the deadline for compliance should be set at the time of the commencement of the sentencing hearing. In essence, however, the government urges us to rely on the policy concerns expressed in *Marin* to move the deadline earlier in time. According to the government, the defendant's good faith cooperation is to be evaluated, as a whole, from the start of the criminal proceeding. We decline to stretch the meaning of § 3553(f)(5) in such a manner.

Preliminarily, it may be that the statute fails to minimize the opportunity for gamesmanship by not requiring immediate, fully truthful disclosure, or by not imposing some overarching duty of good faith cooperation based on the totality of a defendant's conduct. To the extent that this problem exists, however, the remedy lies in Congress, not in a judicial rewrite of plain text. At any rate, we are convinced that the concerns identified in *Marin*, and now pressed by the government, are largely theoretical and do not present a significant risk to the integrity of the safety valve so long as the deadline set by *Marin* is enforced.

First, as a practical matter, a defendant who changes his or her story to match the government's evolving knowledge of the events risks irrevocably undermining his or her credibility. *Cf. United States v. Montanez*, 82 F.3d 520, 523 (1st Cir.1996) ("In theory full disclosure might exist where a defendant's [proffer] recited back to the government ... information already possessed by the government and nothing more. But in practice this is hardly likely, especially where several different drug transactions and multiple players are involved."); *United States v. Fletcher*, 74 F.3d 49, 56 (4th Cir.1996) (affirming denial of safety valve for appellant who had committed perjury at trial; in light of the perjury, "it is not illogical to assume that the judge similarly determined that [defendant] failed to ... truthfully provide[ ] to the government all information and evidence he ha[d]" for purposes of safety valve compliance); *United States v. Edwards*, 65 F.3d 430, 433 (5th Cir.1995) (affirming denial of safety valve on ground that defendant had not been fully truthful; noting that defendant had made inconsistent statements regarding the amount of drugs in his possession).

This strategy is particularly risky because it is the defendant who must prove that the disclosure is both true and complete. *See Ortiz*, 136 F.3d at 883–84 (also holding that the government has no general duty to seek out information from the defendant). As the First Circuit noted in *Montanez*, "Courts have thus far found it fairly easy to cull serious efforts at full disclosure from mere pretense." *Montanez*, 82 F.3d at 523.

Second, an untruthful defendant risks the possibility that his or her lies will be exposed at the sentencing hearing itself, thus disqualifying the defendant from re-

lief. *Cf. Marin,* 144 F.3d at 1095 (disclosure must occur by the time of the commencement of the sentencing hearing); *United States v. Long,* 77 F.3d 1060, 1062 (8th Cir.1996) (full disclosure on cross-examination during sentencing hearing is untimely).

Third, a defendant who views proffer sessions as opportunities for gamesmanship risks an outcome similar to what happened here: if lied to, the government may refuse further meetings with the defendant, thereby damaging the defendant's opportunity to prove that he or she has been completely forthcoming. *See United States v. Beltran–Ortiz,* 91 F.3d 665, 669 & n. 4 (4th Cir.1996) ("Debriefing by the Government plays an important role in permitting a defendant to comply with the disclosure requirement of the safety valve provision and in convincing the Government of the fullness and completeness of a defendant's disclosure . . . ."; also noting that a debriefing is the defendant's "best opportunity" to make disclosure).

█ The safety valve statute does not specify the form, place, or manner of disclosure. A defendant may comply with the safety valve without ever submitting to a debriefing, and we see no general obligation on the government's part to grant a defendant a debriefing. *See Montanez,* 82 F.3d at 522–23; *Beltran–Ortiz,* 91 F.3d at 669 n. 4 ("We do not hold that the Government must debrief all defendants."). Thus, the facts surrounding a debriefing, or the lack of a debriefing, become part of the total mix of evidence for the district court to consider in evaluating the completeness and truthfulness of the defendant's proffer. If, for example, the government refuses from the outset to meet with a defendant, such fact may weigh in favor of a finding that a defendant's written proffer is complete. On the other hand, a defendant who refuses to meet with the government will find it more difficult to prove that complete and truthful disclosure has been made. *Compare Montanez,* 82 F.3d at 523 ("[A] defendant who

declines to offer himself for a debriefing takes a very dangerous course.") *with United States v. Brack,* 188 F.3d 748, 763 (7th Cir. Aug.6, 1999) (defendant's truthful written statement combined with his request for a proffer session constituted compliance with safety valve where government "rebuffed" defendant's request; government "could not complain of incompleteness when it refused to allow him to finish telling his story").

Fourth, we are unconvinced that the "government's interest in full, truthful disclosure when it interviews defendants," *Marin,* 144 F.3d at 1093, provides any basis for placing additional requirements on defendants who seek to comply with the safety valve. Since the statutory deadline is "not later than the time of the sentencing hearing," the government's right to a § 3553(f) disclosure does not accrue until that time. Further, the statute says that the information disclosed need not be new or useful to the government. *See* 18 U.S.C. § 3553(f)(5) (fact that defendant lacks "relevant or useful" information, or information "the Government is already aware of," does not disqualify defendant from compliance). If a safety valve proffer provides the government with new, useful information, this is a windfall to the government. Accordingly, the government cannot legitimately claim to depend on a safety valve proffer as a source of information about the crime. Moreover, to the extent that the government's interest in disclosure could justify penalizing defendants who lie or withhold information during proffer sessions, a similar scheme already exists independent of the safety valve. *See* U.S.S.G. § 3C1.1 (obstruction of justice). The text of § 3553(f) is devoid of any suggestion that the safety valve is meant to supplement § 3C1.1.

Having rejected the government's policy argument, we join other circuits to hold that lies and omissions do not disqualify a defendant from safety valve relief so long as the defendant makes a complete and truthful proffer not later than the com-

mencement of the sentencing hearing. *See United States v. Tournier*, 171 F.3d 645, 646–48 (8th Cir.1999); *United States v. Shrestha*, 86 F.3d 935, 940 (9th Cir.1996); cf. *United States v. Gama–Bastidas*, 142 F.3d 1233, 1242–43 (10th Cir.1998) (remanding for district court to consider defendant's safety valve proffer; district court had refused to consider the information because it was provided as a "last ditch effort" to comply before sentencing); *Marin*, 144 F.3d at 1095 (safety valve disclosure must occur "by the time of the commencement of the sentencing hearing"). To the extent that our approach is inconsistent with *United States v. Ramunno*, 133 F.3d 476, 482 (7th Cir.1998) (holding that appellant "forfeited his opportunity" to benefit from the safety valve where he admitted to the government's version of the facts only after the government directly confronted him, prior to sentencing, with specific evidence that he had lied), we decline to follow *Ramunno*.

Because it disqualified appellant at the threshold, the district court never considered the factual question of whether appellant's final proffers were complete and truthful. We remand for such a finding. The fact that appellant repeatedly lied and obstructed justice prior to allegedly telling the complete truth will be useful in evaluating whether appellant's final proffers were complete and truthful. Further, the district court should evaluate the significance of the government's refusal to meet with appellant in 1996 and thereafter, as well as any of appellant's conduct that may have triggered that refusal.

## III. CONCLUSION

The fact that appellant repeatedly lied about the facts of the conspiracy, and refused to attend a proffer session in 1995, did not render him ineligible as a matter of law for safety valve relief. We therefore VACATE the judgment of conviction and RE-MAND for resentencing in accordance with this opinion.