**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 14, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

JAMMAAL D. BLACKNOLL,

      Defendant-Appellant.

No. 09-3232
(D.C. No.2:07-CR-20100-JWL-9)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **HARTZ**, **BALDOCK**, and **GORSUCH**, Circuit Judges.

After Jammaal D. Blacknoll pled guilty to drug charges, he argued he was

eligible for the safety valve provision in 18 U.S.C. § 3553(f), which allows the

district court to sentence him to a lesser term than the statutory minimum. The

district court disagreed, finding that Mr. Blacknoll had failed to provide complete

and truthful cooperation to the government as the safety valve provision requires.

On appeal, Mr. Blacknoll argues he did fully cooperate with the government and

---

[*] After examining appellant's brief and the appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2) and 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

submits that the district court's contrary finding is clearly erroneous. Our independent review, however, reveals that the district court had reason to doubt the veracity and completeness of Mr. Blacknoll's testimony. Accordingly, we affirm.

I

Mr. Blacknoll was indicted, along with ten other co-defendants, for his involvement in a drug conspiracy. He ultimately pled guilty to one count of conspiracy to distribute approximately 1000 kilograms of marijuana and five kilograms of cocaine, in violation of 21 U.S.C. § 846 and 21 U.S.C. § 841, as well as one count of possession with intent to distribute approximately 100 kilograms of marijuana, in violation of 21 U.S.C. § 841 and 18 U.S.C. § 2. In the usual course, a Presentence Investigation Report ("PSR") was prepared for the district court.

Mr. Blacknoll objected to the PSR's failure to apply the safety valve provision codified in 18 U.S.C. § 3553(f) to reduce his sentence below the statutory minimum. In order to be eligible for the safety valve, a defendant must, among other things, truthfully provide to the government all information he has relevant to the offense of conviction. *See* § 3553(f)(5). Mr. Blacknoll claimed he did just that, but the government disagreed. To resolve the dispute, the district court held a sentencing hearing at which it elected to entertain testimony from Special Agent Doug Dorley and Mr. Blacknoll.

Special Agent Dorley testified that he interviewed Mr. Blacknoll on four separate occasions prior to Mr. Blacknoll's guilty plea, and that during each of these interviews Mr. Blacknoll admitted to making misstatements to the government. Special Agent Dorley further testified that Mr. Blacknoll only admitted to making a prior misstatement after being questioned further or presented with evidence contradicting that statement.

For example, Mr. Blacknoll initially told Special Agent Dorley that he had only visited the stash house with his uncle and a co-defendant named Johnathan Kohrs. But when Special Agent Dorley informed Mr. Blacknoll that the government had video footage of him entering the stash house with his wife and child, Mr. Blacknoll admitted that he had visited the house with his wife.

Mr. Blacknoll also initially told Special Agent Dorley that he only owned a Cadillac Escalade that his wife purchased with legitimate funds. After further questioning, however, Mr. Blacknoll conceded he had bought the Escalade with drug money — and he also admitted owning a Corvette.

Special Agent Dorley testified, as well, that Mr. Blacknoll gave contradictory testimony about the involvement of others in the drug trafficking ring. While Mr. Blacknoll initially stated his wife had no involvement, he later admitted that she "helped count the money once or twice." Aplt. App. Vol. I at 64. And while Mr. Blacknoll first told Special Agent Dorley that his friend Tommy Humphreys was not involved in drug trafficking, after Special Agent

- 3 -

Dorley confronted Mr. Blacknoll with the fact that the government knew he had received 500 pounds of marijuana from Mr. Humphreys, Mr. Blacknoll admitted he and Mr. Humphreys had a drug trafficking relationship. Given this pattern of inconsistent statements, Special Agent Dorley testified that he wasn't sure Mr. Blacknoll *ever* told the government the truth.

At the hearing, Mr. Blacknoll replied to all this by acknowledging that he had revised many of his statements during the course of the interviews. But he also claimed that, in the end at least, he told the government everything he knew. He also claimed (for the first time) that the reason he had not earlier told the government about Mr. Humphreys's participation in the drug ring was that Mr. Humphreys had threatened to kill him if he did. Mr. Blacknoll testified that Mr. Humphreys first threatened him while they were both on a trip to Las Vegas. According to Mr. Blacknoll, Mr. Humphreys called several months later to arrange another meeting in a parking lot, at which Mr. Humphreys again threatened to kill Mr. Blacknoll if Mr. Blacknoll informed on him. Mr. Blacknoll had not mentioned either of these threats during any of the four interviews with Special Agent Dorley.

During the sentencing hearing, the district court explained to both parties that it read the safety valve provision to require Mr. Blacknoll to disclose truthfully all information known to him by the conclusion of the sentencing hearing, rather than before its commencement. So, the court reasoned, even if

Mr. Blacknoll had not been fully forthcoming in his interviews with the government, he could still be eligible for the safety valve if he provided completely truthful information at the sentencing hearing itself.

Even so, by the hearing's conclusion, the court found Mr. Blacknoll hadn't been wholly truthful. It thus found Mr. Blacknoll was not eligible for the safety valve and so sentenced him to the statutory minimum of 120 months' imprisonment on the conspiracy count and 87 months' imprisonment on the possession count, to run concurrently.

II

18 U.S.C. § 3553(f), known as the "safety valve" provision, "permits the district court to disregard a statutory mandatory minimum sentence and instead impose a sentence within the advisory sentencing guidelines range, if the defendant meets five criteria." *United States v. Altamirano-Quintero*, 511 F.3d 1087, 1090 (10th Cir. 2007); *see also* U.S.S.G. § 5C1.2(a) (providing that "the court shall impose a sentence in accordance with the applicable guidelines without regard to any statutory minimum sentence, if the court finds that the defendant meets the criteria in 18 U.S.C. § 3553(f)(1)-(5)"). The only one of these criteria at issue in this case is the final one, requiring that "not later than the time of the sentencing hearing," the defendant must "truthfully provide[ ] to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common

scheme or plan." 18 U.S.C. § 3553(f)(5). The phrase "offense or offenses that were part of the same course of conduct or of a common scheme or plan" is defined as "the offense of conviction and all relevant conduct." § 5C1.2, comment. (n. 3).

On appeal, Mr. Blacknoll challenges the district court's factual finding that he failed to provide truthful and complete disclosure about his crimes during the sentencing hearing. Under our case law, we review a district court's factual determination on this score only for "clear error." *Altamirano-Quintero*, 511 F.3d at 1098. This is no easy hurdle to clear. For a finding to qualify as clearly erroneous, the appellant must show that it is "more than possibly or even probably wrong; the error must be pellucid to any objective observer." *Watson v. United States*, 485 F.3d 1100, 1108 (10th Cir. 2007).

Before addressing this factual question, however, we acknowledge an antecedent legal one lurking in the background. The district court interpreted the language of the safety valve provision — requiring Mr. Blacknoll to come clean "not later than the time of the sentencing hearing" — to allow him to wait until the sentencing hearing to provide completely truthful information about his activities. That is, he could lie during his interviews with the government and still obtain a safety valve reduction if he testified truthfully at the sentencing hearing. Whether this view of the statute is correct is a question this court has not yet answered. A number of our sister circuits have, however, adopted an

apparently different reading of the language, requiring the offender to make a complete and proper disclosure of information *before* the commencement of the sentencing hearing. *See, e.g., United States v. Brenes*, 250 F.3d 290, 293 (5th Cir. 2001); *United States v. Schreiber*, 191 F.3d 103, 107 (2d Cir. 1999); *United States v. Marin,* 144 F.3d 1085, 1091 (7th Cir. 1998).

As it happens, however, we have no need to enter this fray today. Even assuming without deciding that the district court's reading of the statute was the right one, Mr. Blacknoll has not carried his burden of showing that the district court's factual finding — that he failed to provide truthful and complete information about his activities by the completion of the sentencing hearing — was clearly erroneous.

When asked at the sentencing hearing why he hadn't told the government about Mr. Humphreys's involvement in the drug ring until the final interview, Mr. Blacknoll claimed that Mr. Humphreys had twice threatened to kill him if he snitched, once in Las Vegas and then later at a mutually agreed meeting. While maybe not an entirely unfathomable scenario, the district court was entitled to disbelieve this testimony, as it did, given that Mr. Blacknoll (1) failed to mention any such threats in four prior meetings with the government; (2) asked the court to believe that, after Mr. Humphreys threatened to kill him once in Las Vegas, he nonetheless willingly agreed to meet him in a parking lot several months later, only to be threatened again; and (3) had a substantial history of fabricating stories

to explain away his own illicit activities and those of others. Indeed, it was entirely permissible for the district court to credit, as it did, Special Agent Dorley's testimony that, by dint of so many misrepresentations in the past, the government could not be sure Mr. Blacknoll *ever* provided fully truthful information. It is a fact of life that someone "who changes his or her story to match [others'] evolving knowledge of the events risks irrevocably undermining his or her credibility." *Schreiber*, 191 F.3d at 107. That's the conclusion the district court reached in this case. And the record in this case precludes us from saying an objective observer would have to find that conclusion not just possibly or probably wrong, but clearly wrong.

The judgment of the district court is affirmed.

ENTERED FOR THE COURT


Neil M. Gorsuch
Circuit Judge