[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-11694
Non-Argument Calendar
_____

D.C. Docket No. 8:18-cr-00525-JSM-TGW-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ORLANDO VICTORIA VALOY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(October 8, 2020)

Before ROSENBAUM, JILL PRYOR, and LAGOA, Circuit Judges.

LAGOA, Circuit Judge:

Orlando Victoria Valoy ("Valoy") appeals his 120-month sentence for conspiracy to possess five or more kilograms of cocaine with the intent to distribute, while aboard a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. § 70503(a)(1), and possession of five or more kilograms of cocaine with the intent to distribute, while aboard a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. § 70503(a)(1) and 18 U.S.C. § 2. Valoy challenges the district court's denial of his request for safety-valve relief. Valoy further challenges the validity of the underlying conviction and argues that the Maritime Drug Law Enforcement Act ("MDLEA") is unconstitutional. We affirm Valoy's conviction and sentence.

## I.    FACTUAL AND PROCEDURAL HISTORY

On or about October 20, 2018, the United States Coast Guard ("Coast Guard") intercepted and apprehended a go-fast vessel with Valoy and his two co-defendants, Henry Bonilla Arias and Gerlin Rutilio Ibarguen Valencia, on board. After boarding the vessel, the Coast Guard officers discovered hand-held GPS units, a satellite phone, a nautical chart, and 68 bales of cocaine weighing approximately 2,040 kilograms. In a post-arrest interview, Valoy identified Bonilla Arias as the master of the ship and informed the government that he was hired by a friend, whom he could not identify, to transport cocaine from Colombia to Costa Rica. He further stated that he would be paid $6,000 to complete the job, but later recanted this

2

statement and instead stated that he would only be paid $784. In a later debriefing with the government, Valoy clarified that he was paid between $6,000 and $8,000 in advance as partial payment.

On October 31, 2018, a grand jury returned a two-count indictment against the crewmen. The indictment charged the crewmen with conspiracy to possess with intent to distribute five or more kilograms of cocaine aboard a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. §§ 70503(a), 70506(a) and (b), and 21 U.S.C. § 960(b)(l)(B)(ii), and possession with intent to distribute five or more kilograms of cocaine aboard a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. §§ 70503(a) and 70506(a) and (b), 18 U.S.C. § 2, and 21 U.S.C. § 960(b)(l)(B)(ii). The statutory maximum term of imprisonment for these criminal offenses is life. 21 U.S.C. § 960(b)(1)(B)(ii).

Valoy pleaded guilty to both counts in the indictment. Prior to Valoy's sentencing hearing, the probation officer prepared a presentence investigation report ("PSR") that stated his criminal history category was I and recommended that Valoy's base offense level be 38 based on the large amount of cocaine involved in the case. The probation officer further recommended that a three-level reduction be applied under U.S.S.G. § 3E1.1 for Valoy's acceptance of responsibility but recommended against any additional decreases based on either his minor role in the offenses or the safety-valve relief provision. Valoy's counsel objected to various

3

aspects of the PSR including the recommendations against these two downward adjustments.

At his April 24, 2019, sentencing hearing, Valoy's counsel again argued that he merited both a minor-role adjustment and safety-valve relief. The district court granted Valoy a downward adjustment based on his minor role in the crimes. The district court, however, denied Valoy's request for application of the safety-valve provision on the basis that he was not fully truthful about the offenses. As a result, the district court determined that Valoy's offense level was 27 and sentenced him to the guidelines sentence of 120 months of imprisonment—the applicable statutory minimum. Valoy's counsel reiterated the objection to the denial of safety-valve relief. This appeal ensued.

## II.     STANDARD OF REVIEW

This Court reviews the district court's factual findings in its denial of safety-valve relief for clear error. *United States v. Johnson*, 375 F.3d 1300, 1301 (11th Cir. 2004). A district court's choice between "'permissible views of evidence' is the very essence of the clear error standard of review." *United States v. Rodriguez De Varon*, 175 F.3d 930, 945 (11th Cir. 1999) (en banc) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985)). And this Court rarely finds clear error when the basis of the district court's decision is supported by the record and does not misapply the law. *Id.*

4

We review *de novo* a challenge to the constitutionality of a statute. *United States v. Rozier*, 598 F.3d 768, 770 (11th Cir. 2010). Although a guilty plea generally waives a defendant's right to appeal his conviction, it does not waive the right to challenge the constitutionality of the statute underlying the conviction. *See United States v. Saac*, 632 F.3d 1203, 1208 (11th Cir. 2011).

## III.    ANALYSIS

Valoy appeals both his sentence and his conviction under the MDLEA. First, he argues that the district court clearly erred in denying his request for safety-valve relief. Second, Valoy argues that his conviction is invalid because the MDLEA is unconstitutional. We discuss each argument in turn.

### A.    The Safety-Valve Provision[1]

"Safety-valve relief allows for sentencing without regard to any statutory minimum, with respect to certain offenses, when specific requirements are met." *United States v. Brehm*, 442 F.3d 1291, 1299 (11th Cir. 2006). The safety-valve

---

[1] For purposes of this appeal, we assume that Valoy, a defendant convicted for offenses under 46 U.S.C. §§ 70503 and 70506, is eligible for safety-valve relief. Prior to the enactment of the First Step Act, defendants convicted under the MDLEA were not eligible for relief under the safety-valve provision. *See United States v. Pertuz-Pertuz*, 679 F.3d 1327, 1329 (11th Cir. 2012) ("[T]he plain text of the statutes shows that convictions under Title 46 of the U.S. Code—like Defendant's—entitle a defendant to no safety-valve sentencing relief."). But through the First Step Act, Congress amended 18 U.S.C. § 3553(f) to add MDLEA offenses to the list of crimes eligible for safety-valve relief. *See* First Step Act of 2018, Pub. L. No. 115-391, § 402(a)(1)(A)(ii), 132 Stat. 5194, 5221 (2018); *see also United States v. Cabezas-Montano*, 949 F.3d 567, 604 n.36 (11th Cir. 2020). Because this amendment was prospective for convictions entered on or after the date of enactment, December 21, 2018, Valoy may be eligible for safety-valve relief as his conviction occurred after the enactment of the First Step Act.

provision of 18 U.S.C. § 3553(f) requires the district court to sentence a defendant "without regard to any statutory minimum sentence" if the defendant meets the five factors specified in § 3553(f)(1)–(5). *See* U.S.S.G. §§ 2D1.1(b)(18); 5C1.2.

To warrant safety-valve relief, a defendant has the burden to show that he has met each of the five factors. *Johnson*, 375 F.3d at 1302. Both parties acknowledge that Valoy has satisfied the first four factors. The fifth factor—the only factor at issue here—requires that "the defendant has truthfully provided to the Government *all information* and evidence the defendant has concerning the offense or offenses." U.S.S.G. § 5C1.2(a)(5) (emphasis added). This factor "is a 'tell-*all*' provision: to meet its requirements, the defendant has an affirmative responsibility to 'truthfully disclose to the government all information and evidence that he has about the offense and all relevant conduct.'" *Johnson*, 375 F.3d at 1302 (emphasis in original) (quoting *United States v. Yate*, 176 F.3d 1309, 1310 (11th Cir. 1999)). The defendant must provide the government with "all the information that he possesses about his involvement in the offense, including information relating to the involvement of others and to the chain of the narcotics distribution." *See id.* (quoting *United States v. Cruz*, 106 F.3d 1553, 1557 (11th Cir. 1997)). The district court, in turn, must independently assess the underlying facts and cannot merely rely on the government's representation of the facts. *See United States v. Espinosa*, 172 F.3d 795, 797 (11th Cir. 1999) (per curiam). The district court has "the responsibility for

6

determining the truthfulness of the information the defendant provided to the [g]overnment." *Id.*

"[A] defendant who previously lied or withheld information from the government" is not "automatically disqualified from safety-valve relief" as long as "the defendant makes a complete and truthful proffer not later than the commencement of the sentencing hearing." *United States v. Brownlee*, 204 F.3d 1302, 1304–05 (11th Cir. 2000). But "[t]his does not mean that the defendant's prior lies are completely irrelevant. . . . [T]he evidence of his lies becomes 'part of the total mix of evidence for the district court to consider in evaluating the completeness and truthfulness of the defendant's proffer.'" *Id.* at 1305 (quoting *United States v. Schreiber*, 191 F.3d 103, 108 (2d Cir. 1999)).

Valoy argues that he satisfied the fifth requirement. He further contends that the district court failed to make any specific factual findings as to the truthfulness of his statements to the government but rather merely relied on the government's assessment of his truthfulness when it denied safety-valve relief. The record shows, however, that the district court at the sentencing hearing considered at length both the arguments raised by the government and by Valoy. After independent review of all parties' written and oral statements, the district court explicitly found that Valoy had not truthfully provided to the government *all* the information that he possessed concerning the offense. Specifically, the district court noted Valoy's failure to

identify who hired him for the job even though he described the person as a "friend." This failure, along with the inconsistencies in Valoy's statements to the government about the amount of money he would earn from the job and the background of how he was hired for the job, provided a sufficient basis for the district court to determine that Valoy did not provide all the information he had about his crimes. Because Valoy failed to carry his burden of demonstrating complete and truthful disclosure to the government, we conclude that the district court did not clearly err and affirm the district court's denial of Valoy's request for safety-valve relief.

## B.    The Constitutionality of the MDLEA

Valoy further argues that his conviction under the MDLEA is unconstitutional because: (1) Congress's power to define and punish felonies does not extend to drug-trafficking offenses committed by foreigners on the high seas, without a sufficient "nexus" to the United States; and (2) the MDLEA violates the Fifth and Sixth Amendments by removing the determination of jurisdictional facts from the jury. But as Valoy concedes, both constitutional arguments are foreclosed by this Court's binding precedent. Under the prior panel precedent rule, we are bound to follow a prior decision until it is overruled by the Supreme Court or this Court sitting *en banc*. *United States v. Romo-Villalobos*, 674 F.3d 1246, 1251 (11th Cir. 2012).

As to Valoy's first contention, this Court has consistently held that the MDLEA is a valid exercise of Congress's power under the Felonies Clause[2] as applied to a drug-trafficking crime without a nexus to the United States. *See United States v. Campbell*, 743 F.3d 802, 810 (11th Cir. 2014) ("[W]e have always upheld extraterritorial convictions under our drug trafficking laws as an exercise of power under the Felonies Clause." (alteration in original) (quoting *United States v. Bellaizac-Hurtado*, 700 F.3d 1245, 1257 (11th Cir. 2012)); *see also Cabezas-Montano*, 949 F.3d at 587; *United States v. Valois*, 915 F.3d 717, 722 (11th Cir. 2019); *United States v. Cruickshank*, 837 F.3d 1182, 1187–88 (11th Cir. 2016); *United States v. Estupinan*, 453 F.3d 1336, 1338–39 (11th Cir. 2006).

As to Valoy's second contention, this Court has also consistently held that the Fifth and Sixth Amendments do not require a jury to determine whether extraterritorial jurisdiction exists under the MDLEA. *See United States v. Tinoco*, 304 F.3d 1088, 1109–12 (11th Cir. 2002) (holding that the MDLEA jurisdictional requirement goes to the subject-matter jurisdiction of courts, is not an essential element of the MDLEA substantive offense and therefore does not have to be submitted to the jury for proof beyond a reasonable doubt); *see also Cabezas-Montano*, 949 F.3d at 587; *Valois*, 915 F.3d at 722; *Cruickshank*, 837 F.3d at 1192;

---

[2] *See* U.S. Const. art. I, sec. 8, cl. 10 (providing Congress the power "[t]o define and punish . . . Felonies committed on the high Seas").

*Campbell*, 743 F.3d at 809; *United States v. Rendon*, 354 F.3d 1320, 1326–28 (11th Cir. 2003).  Accordingly, based on our prior precedents, Valoy's challenges to the constitutionality of the MDLEA are foreclosed, and we affirm.

## IV.  CONCLUSION

For the reasons stated, we affirm the district court's denial of Valoy's request for safety-valve relief and affirm Valoy's sentence and conviction under the MDLEA.

**AFFIRMED.**